**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
Consolidated Cases
2:05cv216
[Consolidating 2:05cv216; 2:05cv217; 2:05cv218]**


DOROTHY DODD,                            )

                                       )

            **Plaintiff,**         )     **SECOND**

**Vs.**                                )     **MEMORANDUM AND**

                                       )     **RECOMMENDATION**

**AUTOMOBILE INSURANCE COMPANY**    )

**OF HARTFORD, d/b/a TRAVELERS,**    )

                                       )

            **Defendant.**       )

_____   )


MURIEL DANTZLER,                 )

                                       )

            **Plaintiff,**         )

                                       )

**Vs.**                                )

                                       )

**STATE FARM FIRE AND CASUALTY**    )

**COMPANY,**                           )

                                       )

            **Defendant.**       )

_____   )


JO TREADWELL,                    )

                                       )

            **Plaintiff,**         )

                                       )

**Vs.**                                )

                                       )

**STATE FARM FIRE AND CASUALTY**    )

**COMPANY,**                           )

                                       )

            **Defendant.**       )

_____   )

      **THIS MATTER** is before the court on plaintiffs' Third Motion to Amend

Complaints Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure (#43), plaintiffs' Motion for Partial Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure (#45), defendant Automobile Insurance Company of America's ("Hartford's") Motion for Partial Summary Judgment (#47), and Hartford's Motion to Strike (#52).[1]

After the parties fully briefed the issues, a hearing was held in Asheville on November 17, 2006, at the request of the parties. It appearing that the issues have been fully briefed and that oral arguments have been presented, the undersigned enters the following findings, conclusions, and recommendation.

## FINDINGS AND CONCLUSIONS

### I.  Background

In this action, plaintiffs contend that at times relevant to this action, they owned residences in the Peeks Creek community of Franklin, North Carolina. Dodd Amended Complaint, at ¶ 3 (hereinafter "Amended Complaint").[2] On September 16, 2004, they contend that their respective residences were damaged due to a "debris flow," and that they thereinafter filed claims for such damage with their respective insurers, defendants herein Id., at ¶ 6. They contend that after filing such claims, their

---

[1]     The duplicative motions filed in the consolidated cases have been terminated.  In consolidated case, it is only necessary to file a motion in the lead case.

[2]     The Dodd Amended Complaint will only be referenced inasmuch as the substantive allegations are identical in the consolidated cases.

claims were denied despite being "covered by the Policy and . . . not otherwise excluded from coverage." Id., at ¶ 8.

Plaintiffs have filed a third Motion to Amend and Motions for Partial Summary Judgment. Hartford has also moved for summary judgment as to Plaintiff Dodd and to strike her reliance on the affidavits she has proffered in opposing Hartford's Motion for Summary Judgment.

## II.    Summary Judgment Standard

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the

outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

## III. Plaintiffs' Motions

### A. Third Motions to Amend

Plaintiffs seek leave to amend their respective amended complaints to allege additional causes of action for tortious breach of contract and for unfair and deceptive trade practices. As were the second motions to amend, these motions are premised on defendants' respective adjusters' alleged failure to conduct an adequate

investigation of their claims before denying those claim. Plaintiffs were granted leave by the undersigned in a July 25, 2006, Order to reassert such motions to amend and

> detail the evidence which supports their claims as well as ***the date such evidence was discovered***. . . . the court will again apply the modified analysis provided by <u>Interstate Narrow Fabrics, Inc.</u>, and plaintiffs must not only show that their proposed amendments have evidentiary support, but that good cause exists for allowing amendment after the close of discovery.

Order, docket entry 42, at 7 (emphasis in the original).

A review of the deposition of Mr. Dodd shows that any information that he had about the alleged mishandling of his mother's claim was known to him well before the filing of the claim. (<u>Defendant's Motion of Summary Judgment Exhibit "D" pp. 65-92).</u> When questioned about any information or evidence that the defendant Travelers engaged in bad faith or unfair and deceptive trade practices, Mr. Dodd states that he doesn't have any direct evidence on that issue. <u>Id. at 87.</u>

After reviewing the materials presented and hearing arguments, plaintiffs proposed amendments again failed because plaintiffs have not shown that good cause exists for allowing what would be case-altering amendments after the close of discovery. There is no evidence that the claims constituting "the proposed amendment would not have been discovered 'in the exercise of reasonable diligence' until after the amendment deadline had passed." <u>Interstate Narrow Fabrics, Inc. v. Century USA, Inc.</u>, 218 F.R.D. 455, 460 (M.D.N.C. 2003). It appears undisputed that these plaintiffs knew the extent and nature of the claims investigations conducted before this action was filed. Finally, and in further support of this recommendation, the undersigned fully incorporates the reasoning contained in the July 25, 2006, Order

as if fully set out herein. The undersigned will, therefore, recommend that the Third Motion to Amend be denied.

**B.  Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs have moved for entry of a partial summary judgment in their favor, seeking a judicial declaration that the exclusionary provisions of their policies of insurance are ambiguous.  For purposes of this motion, the undersigned finds the policies to be identical in relevant parts with the exception of one *coma*.

Having carefully read and reread the policies, the undersigned cannot say as a matter of law that exclusionary provisions of the policies of insurance at issue in this case are ambiguous as a matter of law.  Under North Carolina law, an ambiguity in an insurance policy exists as a matter of law only if the words of the policy are capable of differing fair and reasonable interpretations.  Register v. White, 358 N.C. 691, 695 (2004).  In interpreting the language of the policy, the court examines the alleged ambiguities from the perspective of a reasonable insured, Alwart v. State Farm Fire and Cas. Co., 131 N.C.App. 538, 540 (1998), not from the perspective of a linguistics expert.

The court has given little, if any, weight to the opinion testimony of plaintiffs' proffered expert because it is admittedly not in certain respects based on a review of the applicable policy language, it is not based on any learned study of insurance policy drafting, and it was admittedly not based on studies of what "reasonable insureds" would consider to be the meaning of the policies  Id.  Thus, plaintiffs' expert possesses no specialized knowledge that would assist this court in determining

whether the policy is ambiguous as a matter of law.

_____The undersigned has also conducted a review of the actual policy language to determine whether it is, as a matter of law, ambiguous. The language from the applicable 2003 policy endorsement is, as follows:

> **2.** **Earth Movement**, meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; . . . .

Defendant's Response, Ex. A., at 3 (emphasis in original). Without doubt, a reasonable insured could read such policy as excluding "earth movement," which includes the following distinct geologic events: (1) earthquakes (including all land shock waves or tremors associated with a volcanic eruption); (2) landslides; (3) mine subsidence; (4) mudflow; and (5) earth sinking, rising, or shifting. To find that these exclusions could only be read as plaintiffs suggest would first require a finding that a reasonable insured would not read the text as a normal person would and second that a reasonable insured would ignore the presence, placement, and purpose of the semicolons, which is "to connect independent clauses . . . ." *The American Heritage Dictionary,* 4th Ed. (2000), at p.1582.

Plaintiffs also take issue with the language of the policy that introduces the exclusions, and provides that the insurers

> do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

Defendant's Response, Ex. A. Plaintiffs argue that the word "indirectly" is an "abstract idea" that sets no limits and that the phrase "in any sequence" eliminates

temporal restraints on excludable events.

As to this language, plaintiffs' own purported linguistics expert finds no ambiguity with these words, thus plaintiffs are only speculating. Independent of such proffered expert opinion, the undersigned cannot find that such terms as a matter of law or common sense are ambiguous. In fact, "indirectly" and "in any sequence" have very specific meanings in common parlance, and the key words are defined in any school dictionary. Further, such policy language is easily translatable into examples of loss: if a bolder atop a cliff is shaken loose by a earthquake or other listed earth movement, the resulting damage is not covered because the loss was indirectly caused by the earthquake. If the same bolder falls of its own accord from a cliff, striking the San Andreas Fault so as to trigger an earthquake, which then destroys an insured's home, that event is also not covered under the "any sequence" provision of the policy. If, however, a tornado picks up the boulder and hurls into the insured's home, this event would be covered.

The undersigned must, therefore, recommend that plaintiffs' Motion for Partial Summary Judgment be denied.

## IV.    Hartford's Motions

### A.    Hartford's Motion for Summary Judgment

Hartford has moved for summary judgment. For cause, Hartford argues that Plaintiff Dodd cannot prevail on her theory that her loss was covered by the policy for two reasons: first, because her own experts have testified that a debris flow is just a type of landslide, which is excludable; and second, because she, unlike the other

plaintiffs, has offered no eyewitness testimony that own her home was destroyed by wind or wind-driven debris.

### 1. Debris Flow Experts

The undersigned agrees with defendant that Plaintiff Dodd's experts provide testimony antithetical to her theory that her home was destroyed by a debris flow caused by a tornado or high winds in that it was the expert's opinion that the home was destroyed by debris flow caused by earth movement or water flow. Clearly, Dodd' own experts equate those debris flows with landslides.

### 2. Airborne Debris Flow

Reading the pleadings and materials submitted in a light most favorable to Dodd, it appears that she is contending now that her home was destroyed by an airborne debris flow. Inasmuch as Dodd was not at her home when the event occurred, she is relying on the eyewitness affidavits of her neighbors and other plaintiffs to provide circumstantial evidence of the cause of her loss. While some issue has been raised as to form of the affidavits (addressed below), it is undisputed that the other plaintiffs and witnesses to the events have presented vivid eyewitness affidavits of what they saw when their homes and the homes of others were destroyed on September 16, 2004. They provide accounts of running for their lives as they observed trees, being propelled like missiles by fierce winds, destroy their homes.

In the affidavit of Christy McCollum, Ms. McCollum states the following:

> All of a sudden, the windows were blown out of the house by the wind. I was facing three windows in the living room, and the wind shattered the glass of all three and sucked the shattered glass out into the sky. We all began to move to the kitchen in an attempt to leave the house.

Almost immediately thereafter, a tree with approximately a five-foot wide trunk went through the house like a javelin, and then the house was hit with a massive force, which later turned out to be a 40-foot high wall of trees and boulders. (Affidavit of Christy McCollum 25 August 2006)

In the affidavit of Isaac Dills, Mr. Dills avers:

I looked up Peeks Creek toward the peak of Fishhawk Mountain. I saw a purplish light spreading over the peak of Fishhawk Mountain. The purplish light spread and mushroomed out for a few seconds like a Roman Candle firecracker, then quickly retracted to almost nothing. As soon as the purplish light faded, a bright, white light beam shot straight up into the air over the peak of the mountain. Other than the strange purplish and white lights, it was pitch black outside. The lights appeared to be a tornado at the peak of Fishhawk Mountain. I ran into my house to call my neighbor, Mr. Watts, and to warn him of the lights I had seen and that a tornado was coming. The phone went dead before I could warn him. I have been near tornados in the past, and what I witnessed appeared similar to those other tornados. (Affidavit of Isaac Dills 23 August 2006)

Jimmy Holland averred as follows:

Around 10:00 p.m., my wife said, 'Listen, I hear a tornado.' Then I heard it too, and it sounded like it was coming from Fishhawk Mountain. I grabbed my boots and told my wife we needed to get out of there. I blew out the candles, put my boots on, and ran out of the trailer with Ann. I wanted to get where the tornado would not blow stuff and hit us in the head. We ran behind our trailer and laid down on the bank at the edge of the woods. We could hear the tornado coming, and the wind was twisting. We could feel the wind going in circles. It felt spooky, with the wind twirling around, and like the pressure was real, real low. We could hear pine trees up about 100 feet behind our trailer being blown down, falling and crunching. I heard the storm way up high in the sky, and I also heard the separate sound of something clacking and crashing through the houses by Peeks Creek. We lay there until both sounds passed us. Later, the pine trees behind our trailer looked like pick up sticks that had been thrown over the area. Some of the pine trees that fell down were a couple feet in diameter. (Affidavit of Jimmy Holland 24 August 2006)

In her affidavit, Marilyn Jones describes the events:

Within minutes, I heard trees falling and cracking all around, and I heard

a roar like multiple freight trans bearing down on our house. My husband turned and shined the spotlight toward the noise, and we saw a wall of trees flying toward our home. We ran through the house and jumped out the back door, and continued to run up the side of the mountain. As I ran, I felt the wind blowing trees down all around me, and I heard them crack and fall. I covered my head with my arms because I felt like trees were falling on my head. The wall of trees hit the corner of our house and spun it on its foundation and moved the house approximately 32 feet. Based upon my observations of the high winds on the night of September 16, 2004, and the sounds I heard of trees breaking and falling, I believe a tornado or tornados probably touched down on Peeks Creek that night. (Affidavit of Marilyn Jones 25 August 2006)

Ms. Jones' husband, David Jones, in his affidavit, stated:

I walked onto the porch and heard my wife on the telephone, and then the phone went dead. As I was starting to take my wet boots off, we heard a roar coming down Peeks Creek. It sounded like a number of freight trains or jet engines. I grabbed the spotlight and shined it up the creek, and saw a 25 or 30 foot high wall of trees falling toward us. I also noticed house parts in the wall, specifically what appeared to be vinyl shingles and siding. My wife and I ran out the back door of the house to get away from the wall of debris. As we ran outside, I heard and felt the house move as it was hit by the wall of trees. I believe, based on my observations on September 16, 17, 18, and 19, that a tornado hit the top of Fishhawk Mountain and knocked trees down, which tumbled down onto our house below. The tornado or tornadoes may have caused the path of destruction down to my house. (Affidavit of David Wayne Jones 25 August 2006)


From the arguments received at the hearing, the undersigned has concluded that such affiants have provided evidence of a singular and catastrophic event occurring within close geographic proximity to the Dodd home and "upstream" in the path of the alleged airborne debris flow.[3] In addition to geographical proximity, it would

---

[3]    While this point was not made completely clear at the hearing (and should be for purposes of trial), the undersigned has gathered that at least one if

appear that such affiants' observations were in close temporal proximity to when Dodd's home was likely destroyed, which could even be described as occurring within split seconds.

Hartford argues strongly that its experts and Dodd's experts agree that her home was destroyed by a landslide. The undersigned, finds, however, that eyewitness observations of a catastrophic natural event in regard to other losses that are made in close temporal and geographic proximity to a loss - - the cause of which was not observed by the insured - - may be considered as evidence relevant to the unobserved loss. For example, if a young man ignores evacuation orders in a hurricane and rides out the storm on a particularly high dune and observes high winds blow down the cottages to the South before the storm surge washes over the island leaving but a pile of boards, but does not turn around in time to see the same force of wind blow down the cottages to the North, his testimony as to the proximate cause of the damage to the cottages to the South would be relevant to the cause of the destruction of the cottages to the North. While the evidence as to the cause of the destruction of the cottages to the South would be direct evidence of cause, it would be circumstantial evidence as to the cause of the destruction of the cottages to the North. Regardless, such evidence could provide a reasonable jury with sufficient evidence upon which to return a verdict in favor of the insured cottage owners to the North .

---

not more of the eyewitnesses were "upstream" of the Dodd home in the path of destruction. It would have been helpful to this court if Dodd had provided a map of the area pinpointing her home and the location of each affiant when they made their observations.

> Even where the circumstances support more than one logical conclusion, circumstantial evidence is sufficient to establish proximate cause to overcome a motion for summary judgment as long as the inference in question may reasonably be drawn from the evidence.

Nowak v. Coghill, 296 Ill.App.3d 886, 896 (1998). This is, however, a double edged sword, and if Hartford is able to produce evidence that a wall of mud or waterborne debris was observed as the cause of destruction of other homes, such evidence would also be circumstantial evidence as to the cause of loss of the Dodd home. The undersigned has made a detailed examination of the affidavits and other documents on file in this case. The only conclusion that this court can draw is that there does exist a question of material fact as to what caused the damage to the Dodd home and that issue has to be determined by a jury after considering all admitted evidence. To describe the issue simply: if the jury believes the witnesses who were at Peaks Creek on the night of September 16, 2004 a reasonable jury could return a verdict for the Plaintiff. If the jury believes the testimony of the experts then a reasonable verdict could be in favor of the defendant. The purpose of the jury system is to decide such questions. When such a situation exists granting summary judgment would not be proper.

To that end, the undersigned will recommend that defendant's Motion for Summary Judgment be denied.

### B. Motion to Strike

Hartford has also moved to strike the affidavits submitted by Dodd in opposition to its Motion for Summary Judgment. Hartford relies on Rule 56(e),

which provides, as follows:

**(e) Form of Affidavits; Further Testimony; Defense Required.**
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Hartford argues that none of the ten individuals whose affidavits have been submitted observed the destruction of the Dodd home, that such affidavits contain conclusory and speculative testimony as to the cause of the events of September 16, 2004, and contain inadmissible hearsay and opinion testimony. Brief in Support of Motion to Strike, docket entry 51, at 5.

As to the argument that none of the individuals witnessed the destruction of the Dodd home, that contention has been previously addressed. The remainder of the arguments concern the competence of the affiants. While none of the witnesses appear to be experts in any scientific field, the affiants appear to be proffered as lay and eyewitnesses to the events of September 16, 2004. As such, Rule 701, Federal Rules of Evidence, governs their testimony:

### Rule 701. Opinion Testimony by Lay Witnesses

If the witness is not testifying as an expert, the witness' testimony in the

> form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed.R.Evid. 701. Clearly, a lay witness may testify as to what they saw and may further render testimony in the form of opinions or inferences as to what they perceived the events of September 16, 2004, to be so long as such opinions comply with subparts (a), (b), and (c) of Rule 701. For the purposes of this motion, the undersigned can find no reason to strike these opinions even to the extent such lay witnesses opine that what they observed was a tornadic event.

The undersigned will, therefore, recommend that Hartford's Motion to Strike be denied. To the extent that the affidavits relied on by Plaintiff Dodd are not in full compliance with 28, United States Code, Section 1746, steps should be taken by plaintiffs to cure any deficiencies.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)    plaintiffs' Third Motion to Amend Complaints Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure (#43) be **DENIED**;

(2)    plaintiffs' Motion for Partial Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure (#45) be **DENIED;**

(3)    defendant Automobile Insurance Company of America's ("Hartford's") Motion for  Summary Judgment (#47) be **DENIED;**

and that

(4)     Hartford's Motion to Strike (#52) be **DENIED.**


The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).


Signed: December 15, 2006


Dennis L. Howell
United States Magistrate Judge